UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lindsey Williams-Diggins,             Case No. 3:24-cv-0040

    Plaintiff,

v.                          MEMORANDUM OPINION
                             AND ORDER

Experian Information Solutions, Inc.,

    Defendant.

## I. INTRODUCTION

Defendant Experian Information Solutions, Inc. moved to stay this action and compel arbitration. (Doc. No. 11). Plaintiff Lindsey Williams-Diggins filed a memorandum in opposition, (Doc. No. 14), and Experian replied. (Doc. No. 15). For the reasons stated below, Experian's motion is granted.

## II. BACKGROUND

Williams-Diggins alleges that she contacted Experian on or around September of 2023 to dispute inaccurate information in her credit report. (Doc. No. 1 at 6). Unable to resolve the dispute informally, Williams-Diggins filed suit on January 8, 2024, alleging claims under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.. (*See* Doc. No. 1). She alleges Experian failed to perform a reasonable investigation and continued to report over $100,000 in outstanding student loans even though Experian was notified that the loans were forgiven. (*Id.* at 3-4).

Experian moves to compel arbitration based on Williams-Diggins's enrollment in CreditWorks. (Doc. No. 11 at 10-11). CreditWorks is an online credit monitoring service provided by Experian's affiliate, Experian Consumer Services ("ECS"). (*Id.*). Williams-Diggins originally enrolled in CreditWorks on March 24, 2017. (*Id.* at 5). One of the enrollment requirements was that Williams-Diggins agree to a clickwrap Terms of Use Agreement ("Original Terms"). (*See* Doc. No. 12-3).

The Original Terms contain an arbitration agreement with a carve-out exception for FCRA disputes:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. However, for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

(Doc. No. 12-3 at 3-4).

The Original Terms also delegated the resolution of "[a]ll issues" between the parties to an arbitrator:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

(*Id.*).

Experian amended the Original Terms on December 11, 2023 ("Amended Terms"). (Doc. No. 12-4 at 2). The Amended Terms have a similar arbitration agreement and a similar delegation clause as those of the Original Terms. (*Id.* at 8-9). The amended delegation clause further adds the

2

explicit inclusion of "all issues related to arbitrability." (*Id.* at 9). The Amended Terms have one notable difference—there is no carve-out provision that excepts FCRA disputes from arbitration. (*See id.* at 8-9).

### III. STANDARD

The Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3 & 4); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms.") (internal citations omitted).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Further, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citations omitted).

"Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Such an agreement is "about *who* should decide these questions." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (emphasis in original). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract"—even if "the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Finally, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (alterations omitted). "In effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844 (citing *First Options*, 514 U.S. at 944-45).

### IV. DISCUSSION

Experian first argues the parties formed a valid arbitration agreement when Williams-Diggins enrolled in CreditWorks and agreed to the Original Terms, and that the agreement was affirmed when Williams-Diggins continued to use CreditWorks after the adoption of the Amended Terms. Experian also argues that it can enforce the arbitration agreement directly or, alternatively, as a third-party beneficiary. Williams-Diggins does not dispute the validity or applicability of the Original Terms or Amended Terms, and she does not dispute that Experian can enforce the arbitration agreement. Therefore, I conclude a valid agreement to arbitrate exists between the parties.

Experian next argues that the parties agreed the gateway question of arbitrability—whether the claims fall within the substantive scope of the arbitration agreement—must be decided by the

4

arbitrator. But Williams-Diggins counters that her claims and her CreditWorks arbitration agreement are unrelated. She argues that Experian did not meet its burden to show that her FCRA claims arise out of, or relate to, her CreditWorks agreement.

Here, the Original and Amended Terms both contain undisputed delegation clauses, which delegate "all issues" to an arbitrator to decide, including the "scope and enforceability of this arbitration provision as well as the Agreement's other terms and provisions." (Doc. No. 12-3 at 4; Doc. No. 12-4 at 9-10). These delegation clauses each constitute "clear and unmistakable" evidence that the parties intended for the arbitrator to decide arbitrability. Numerous other courts that have considered the same contract language have come to the same conclusion. *See, e.g., Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp.3d 18, 28 (E.D.N.Y. 2023) (citing *Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634, at *3 (9th Cir. Dec. 27, 2022); *Solis v. Experian Info. Sols., Inc.*, No. SACV 22-00102, 2022 WL 4376077, at *2 (C.D. Cal. Sept. 21, 2022); *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *2 (E.D. Pa. Feb. 25, 2021); *Stephens v. Experian Info. Sols., Inc.*, No. 22-CV-00046, 2022 WL 2716177, at *6 (D. Haw. July 13, 2022)).

Williams-Diggins argues that I cannot compel arbitration because Experian has not made "any effort to demonstrate how" her claims arise out of, or relate to, the CreditWorks agreement. (Doc. No. 14 at 7). But this argument conflates the scope of the arbitration clause with the question of who decides arbitrability. *See Blanton*, 962 F.3d at 844 (warning parties not to "conflate[ ] the scope of the arbitration clause . . . with the question of who decides arbitrability") (citation and internal quotation marks omitted). Even if Experian had made such an "effort," I could not consider it. *See Henry Schein*, 586 U.S. at 68 (When arbitrability is delegated, "a court possesses no power to decide the arbitrability issue.").

While there is a carve-out in the Original Terms for FCRA disputes (though not in the Amended Terms), that carve-out does not create any ambiguity about who decides arbitrability. *See*

5

*Smith v. Experian Info. Sols., Inc.*, No. CV 22-06471, 2023 WL 6057377, at *3 (D.N.J. Sept. 14, 2023); *see also Kisciras v. Experian Info. Sols., Inc.*, No. CV23776ZNQRLS, 2024 WL 1713704, at *3 (D.N.J. Apr. 22, 2024).  This provision only carves out FCRA disputes from the scope of the arbitration agreement, that is, which disputes the parties agreed to arbitrate.  It does not remove FCRA disputes from the scope of the arbitrator's authority to decide questions of arbitrability.  *See Blanton*, 962 F.3d. at 848.  The delegation clause itself delegates "all issues" to the arbitrator without any FCRA exception.

A valid arbitration agreement exists, and it delegates the arbitrability issue to the arbitrator.  ! The delegation clauses in the Original and Amended Terms are each "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability.  Whether the claims are subject to arbitration and even which version of the agreement applies are questions concerning the scope of the arbitration agreement.  *See Kisciras*, 2024 WL 1713704, at *3 (holding that which competing version of the Experian's Terms of Use governs is a decision for the arbitrator).  The parties have delegated these questions to the arbitrator.

## IV.  CONCLUSION

For the reasons stated above, Experian's motion to compel arbitration is granted.  (Doc. No. 12).  Further, this action will be stayed pending completion of the arbitration.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6